

NUMBER 13-09-00175-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JASON WAYNE ROLLER,                                                    **Appellant,**

**v.**

THE STATE OF TEXAS,                                                    **Appellee.**

### On appeal from the 290th District Court
### of Bexar County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, Jason Wayne Roller, appeals from the trial court's revocation of his

deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12

§§ 5(b), 23 (Vernon Supp. 2009). Roller's community supervision was revoked based on

an allegation that he possessed pornographic material, in violation of the terms of his

community supervision.  By two issues, Roller argues that (1) the trial court abused its discretion by finding that Roller possessed pornographic material; and (2) the State violated his right to a speedy trial by delaying prosecution of the alleged violation of Roller's community supervision.  We affirm.

## I. BACKGROUND

On September 30, 2005, Roller was charged by information with fraudulent use and possession of identifying information.  *See* TEX. PENAL CODE ANN. § 32.51 (Vernon Supp. 2009).  The accompanying complaint alleged that on or about June 21, 2005, Roller committed the offense by "posting on the internet without her permission the name and photos of [A.H.] and causing said information to harm [A.H.] by causing unwanted individuals to contact her and putting out to the public information meant to be kept private."[1]

Roller pleaded "nolo contendere" and stipulated to the facts supporting the information.  The stipulated facts included the following: In 2005, Roller, who was A.H.'s ex-boyfriend, created an internet profile on myspace.com in A.H.'s name and posted explicit photographs of her that were taken during their relationship.  Thereafter, A.H. was contacted by several of her friends saying that Roller was having conversations with her friends, posing as her, through the internet site.  On November 9, 2005, the trial court deferred adjudication of the offense and placed Roller on community supervision for three years.  During the period of community supervision, Roller was prohibited from possessing "contraband in your home, vehicle, or on your person, including, but not limited to . . . pornographic materials . . . ."

---

[1] We will refer to the complainant in this case by her initials to protect her privacy.

Roller's community supervision was set to expire on November 9, 2008. On November 6, 2008, however, the State filed a motion to enter an adjudication of guilt and to revoke Roller's community supervision. The motion alleged that on November 17, 2006, Roller possessed pornography in violation of the terms of his community supervision.

On February 17, 2009, Roller filed a motion to dismiss for speedy trial violations. The motion argued that the State unreasonably delayed in prosecuting the alleged violation of Roller's community supervision, impairing his right to defend against the allegation. Specifically, Roller argued that the alleged violation occurred in November 2006 and was based on Roller's alleged posting of pictures on the Internet. Because of the delay, Roller argued that he was unable to obtain information from AT&T Internet Services regarding the location of the computer that transmitted the images, which would have proved the images did not come from his computer. On February 26, 2009, the trial court held a hearing on the State's motion to adjudicate and on Roller's speedy trial motion. Roller pleaded "not true" to the alleged violations of his community supervision.

The State called David Getrost, a criminal investigator for the Bexar County District Attorney's Office. Getrost testified that in September 2006, it came to his attention that images of A.H. had been posted on a website called oneclickchicks.com. Getrost testified that in order to access the oneclickchicks.com, a person must create a username, verify that the person is over eighteen years of age, and provide the address to an active e-mail account. At the time an account is created, the website sends an e-mail to the e-mail address provided, and the user must access his e-mail account and click a link in the e-mail to "activate" the account. The user then can browse and post pictures on the website.

Getrost went to the website and printed the images that appeared. The State

3

offered State's Exhibit 1, which Getrost testified were "the pages of the web page that [he] captured and printed out depicting when images were posted to this website." State's Exhibit 1 shows postings on an internet forum on several dates in September 2006 by a user named "stoneman77." On September 9, 2006, a posting states, "This is [A.H.] at 19," and includes ten pictures of A.H. in various positions either naked or wearing lingerie. On September 17, 2006, another posting by stoneman77 titled, "More of my Ex-girlfriend," states, "These are the last ones I am going to post so let me know what you think." The pictures attached include four naked pictures of A.H. In one of the pictures, A.H. is touching her vagina, apparently masturbating. When asked if it was "fair to say that whoever—the person who uploads these photos has care, custody and control of these photos on this website?," Getrost responded, "Yes."

Getrost testified that he contacted a company called Cheshire Web, who owns the website oneclickchicks.com. He provided Cheshire Web information as to the user name on the web page to "ascertain any type of identifiers, IP addresses and so forth that they would have along with dates and times these pictures were uploaded to that web server." Getrost testified that Cheshire Web informed him that the account for "stoneman77" was created on September 8, 2006, using an e-mail address of "jwroller@yahoo.com."

Cheshire provided Getrost with a CD of pictures that were posted by stoneman77 on oneclickchicks.com. The photos were printed and admitted into evidence as State's Exhibit 9. Exhibit 9 includes, among others, sixteen pictures depicting A.H. in various positions, either naked or wearing lingerie. One of the pictures shows her performing fellatio on a man whose face is not shown.

Getrost stated that he then subpoenaed records from Yahoo!. Yahoo! responded

4

and informed Getrost that the e-mail account, jwroller@yahoo.com, was created on July 26, 2000 and that the full name used to create the account was "Mr. Patricia Benavides." Yahoo! provided a New Braunfels address with a New Braunfels telephone number, showed that the account was active at that time, and provided a subscriber information page. Getrost located and spoke to Patricia Benavides, who provided a statement. Benavides informed Getrost that at one time, she had been Roller's supervisor while working at the attorney general's office. She claimed to be unaware of the e-mail account.

Yahoo!'s records were admitted into evidence as State's Exhibit 5. As part of the records, Yahoo! provided a "Login Tracker" that showed that the user "jwroller" accessed the e-mail account on several dates in May and June of 2007. The records also provided an IP address. Getrost testified that he contacted AT&T in June of 2007, to attempt to locate the computer that posted the images on oneclickchicks.com by tracking the IP address, but AT&T responded that it no longer had the relevant records.

Next, the State called Lee Swafford, who testified that he is a Secret Service agent. He administered a polygraph test to Roller on January 30, 2009, with Roller and his attorney's consent. Swafford stated that Roller told him that jwroller@yahoo.com was his e-mail account.

Finally, A.H. testified. A.H. stated that before she got married in 2007, she told her future husband about her history with Roller and that he had posted pictures of her on the Internet. Her husband was concerned and placed a "Google alert," which she described as follows:

> And so to kind of monitor, I guess, if any other activity was going on, he did what they call a Google alert where they send—because of my unique spelling in my name and my last name, he would do a Google alert where if

5

my name ever popped up or anything affiliated with it, it would come through and pop up on our e-mail account. And one day he was checking his e-mail and this evidence popped up, this particular website.

A.H. stated that her husband went to the website, but he had to create an account to view the pictures. A.H. said that "[a]fter seeing the first picture, he immediately closed it and called [her]."

A.H. testified that the pictures in State's Exhibit 9 were the same that she saw on oneclickchicks.com. She further stated that some of the photos in State's Exhibit 9 were the same photos that served as the basis for Roller's original charge for fraudulent use and possession of identifying information. A.H. stated that one photo in State's Exhibit 9, however, was taken during a trip with Roller when the two were dating and was "one that only he would have had." She stated that this particular photo was never posted on myspace.com, so it was not one that someone could have pulled off the internet. A.H. testified that she was familiar with the e-mail account jwroller@yahoo.com and that she had communicated with Roller through that e-mail account.

The trial court denied Roller's speedy trial motion, found that the allegations in the motion to revoke were "true," adjudicated Roller guilty of the original charge of fraudulent use and possession of identifying information, and sentenced Roller to nine months' imprisonment in the state jail. This appeal ensued.

## II. LEGAL SUFFICIENCY

By his first issue, Roller argues that the trial court abused its discretion in granting the motion to revoke his community supervision and adjudicating guilt because there was no evidence showing: (1) that Roller "possessed" the photographs posted to oneclickchicks.com; and (2) that the photographs constituted pornography. We disagree.

6

## A. Standard of Review

We review the trial court's decision to revoke community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The State must prove a violation of the terms of community supervision by a preponderance of the evidence. *Id.* The State meets its burden when the greater weight of the credible evidence creates a reasonable belief that it is more probable than not that the condition of probation has been violated. *Id.* at 763-64. We view the evidence in the light most favorable to the trial court's judgment. *Davila v. State*, 173 S.W.3d 195, 197 (Tex. App.–Corpus Christi 2005, no pet.). "When the standard of review is abuse of discretion, the record must simply contain some evidence to support the decision made by the trial court." *Id.*

## B. Possession

First, Roller argues that there is no evidence in the record to show that he possessed pornographic materials as that term is defined by the order granting community supervision. The terms of Roller's community supervision stated, "You shall not possess any contraband in your home, vehicle, or on your person, including, but not limited to . . . pornographic materials . . . ." Roller argues that this provision

> did not prohibit him from having access to pornographic material through an e-mail[-]linked internet site that contained what were shown to be pictures of [his] ex-girlfriend . . . . The State may have demonstrated that the appellant had access to the materials in dispute[, but] they wholly failed to demonstrate that he possessed them in a manner prohibited by the order of the trial court.

Neither party cites any case that interprets a provision such as this one, and we have not located any.

Merriam Webster dictionary defines the word "possession" as follows: "the act of having or taking into control." *See* Merriam-Webster Online Dictionary,

7

http://www.merriam-webster.com/dictionary/possession (last visited June 21, 2010). The Texas Penal Code likewise defines possession as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(39) (Vernon Supp. 2009).

Getrost testified that a person with the username "stoneman77" posted the images in State's Exhibit 9 to the website oneclickchicks.com in September 2006. A.H. testified that one of the photographs was taken by Roller during their relationship, that the photo was in Roller's exclusive possession, and that prior to the posting on oneclickchicks.com, the picture was not available on the internet. That photo was posted along with other photos to oneclickchicks.com by a user with an e-mail address admittedly owned by Roller. When asked if it was "fair to say that whoever—the person who uploads these photos has care, custody and control of these photos on this website?," Getrost responded, "Yes." We hold that this testimony was sufficient to support the trial court's finding that Roller possessed, although in electronic format, these photos on his person at the time they were uploaded to the internet. Accordingly, we overrule Roller's argument.

## C. Pornography

Second, Roller argues that the State did not demonstrate that the photographs were pornographic. Specifically, Roller argues that the State was required to put on testimony showing that (1) the average person, applying contemporary community standards, would find that the work taken as a whole appeals to the prurient interest in sex; (2) the work depicts or describes in a patently offensive way, sexual conduct as specifically defined; and (3) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*See id.* § 43.21(a)(1) (Vernon 2003).[2] He argues that the State cannot satisfy this burden by merely presenting the photos to the trial court without any other evidence to support a finding that the materials were pornographic. We disagree.

Roller cites no authority for his argument that the State needed to offer anything more than the photographs to show that they were pornographic in nature. In fact, "[i]n cases involving hard-core pornography, the trier of fact needs no expert advice," and the alleged pornographic material itself can support a finding that the material is pornographic. *Rees v. State,* 909 S.W.2d 264, 270 (Tex. App.–Austin 1995, pet. ref'd); *Ho v. State,* 856 S.W.2d 495, 500 (Tex. App.–Houston [1st Dist.] 1993, no pet.) ("[W]here the items charged as obscene are introduced and admitted into evidence, the State is not required to introduce testimony as affirmative evidence of community standards."). As described above, the photos show A.H. masturbating and performing fellatio on an unidentified man. Thus, there was some evidence to support the trial court's finding that the photos were

---

[2] Section 43.21(a)(1) defines "obscene" material as material that:

(A)     the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B)     depicts or describes:

(i)     patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii)     patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C)     taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX. PENAL CODE ANN. § 43.21(a)(1) (Vernon 2003).

pornographic.  *See Ho*, 856 S.W.2d at 500.  Roller's first issue is overruled.

### III. SPEEDY TRIAL

By his second issue, Roller argues that the trial court erred by denying his speedy-trial motion.  The State argues that in Texas, a speedy trial inquiry is triggered by an unreasonable delay between the time of arrest and the time of formal accusation.  Here, the State argues, there was no unreasonable delay because the motion to revoke was filed on November 6, 2008, and was heard on February 26, 2009.  We agree with the State.

In *Martinez v. State*, the Texas Court of Criminal Appeals addressed a situation similar to the instant case.  *See generally* 531 S.W.2d 343 (Tex. Crim. App. 1976).  In that case, on April 9, 1973, Martinez pleaded guilty to burglary and was placed on community supervision for three years.  *Id.* at 344.  Martinez was convicted of DWI on September 4, 1973.  *Id.*  On January 16, 1975, the State filed a motion to revoke Martinez's probation based on the DWI conviction, and the trial court held a hearing on that motion one month later.  *Id.* at 345.  On appeal, Martinez argued that he was denied the right to a speedy trial because of the seventeen-month delay between the violation of his probation and the filing of the motion to revoke.  *Id.*  The court of criminal appeals disagreed, holding that "an accused's right to a speedy trial does not attach until he first becomes the accused."  *Id.*; *see also Cavazos v. State*, No. 04-98-01054-CR, 2000 WL 124911, at *2 (Tex. App.–San Antonio Feb. 2, 2000, no pet.) (not designated for publication) ("Because a defendant becomes an 'accused' at the moment the motion to revoke probation is filed, the timetable for speedy trial rights commences on that date.").

In this case, the delay between the motion to revoke and the hearing on that motion

was less than four months. "The length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is prima facie unreasonable under the circumstances." *See Shaw v. State*, 177 S.W.3d 883, 889 (Tex. Crim. App. 2003). Generally, delay is not deemed unreasonable until it approaches one year. *Id.* We hold that Roller has not shown an unreasonable delay, and accordingly, we overrule his second issue. *See id.*

## IV. CONCLUSION

Having overruled both of Roller's issues, the trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See TEX. R. APP. P. 47.2(b)

Delivered and filed the
15th day of July, 2010.

11